*Tho Chief Justice delivered the opinion of the [*328 court.
Error is assigned in this case upon the matters contained in a bill of exceptions, and is said to consist in the overruling by the court below, of a receipt offered in evidence by the defendant there, the plaintiff in this court.
Tucker declared on a promissory note, alleged to have been made by Patterson, and afterwards, and without payment by him, improperly cancelled and destroyed. To prove his case lie called and examined one Peter Welsh. Patterson, admitting that Tucker had been in his employ as *408 a tanner, denied the making of a note, insisted that it was an article of agreement relative to the further employment of Tucker, which had not been fulfilled by Tucker, and sought to disprove the testimony of Welsh, and to shew the writing signed by him, to be merely an article of agreement, by circumstances and by antecedent declarations of Welsh himself. He also produced and gave in evidence a full release, executed by Tucker soon after the commencement of the action. He farther alleged that long before the commencement of the action, he had settled with Tucker, and paid him all that was due to him, and offered in evidence a receipt bearing date 11th October, 1817, after the date of the note, for $20 “ in full for work done at tanning for said Patterson,” subscribed Thomas (his (xj mark) Tucker, and bearing the name of Peter Welsh as a subscribing witness. Welsh being asked, whether the name thus subscribed was his handwriting, testified that he did not believe it was., On the part of Patterson a witness testified that Welsh taught school in the neighborhood — he had frequently seen him write, and seen frequently of his' writing, and he thought the signature to the receipt was the handwriting of Welsh, but would not swear to it positively. The same witnéss also testified, that on the day and before the release was executed, in a conversation Tucker told him, on being asked if Patterson owed him anything, that Patterson owed him nothing, and again in. the presence of Patterson, Tucker said he owed him nothing; that they had a settlement, and that $20 had been paid to him by 'Patterson on that settlement. Something was said about.a receipt, and the witness understood from them that a receipt had been given. Afterwards the release was executed, which Tucker was told was to release the suit then commenced. Upon being offered one dollar, the consideration *329] *mentioned in it, he declined receiving it, saying that Patterson owed him nothing. The Court of Common Pleas refused to permit the receipt to be given in evidence to the jury.
*409 On the part of the defendant in error, it is insisted the overruling of the receipt was legal and proper, because the subscribing witness, having denied his signature, there was not sufficient evidence to warrant the court in tubmitting it to the j ury.
The general rule of evidence requires the production and examination of the subscribing witness, whenever there appears one on the face of the instrument. But when the witness cannot be had, the reason of his absence being satisfactorily explained; or when, if had, legal impediments to his examination exist: or when, if present and examined, he is unable or unwilling to prove the execution of the instrument, as if he denies his attestation, or in other words, that ho was present at the execution, and subscribed as a witness, or if he admit his subscription, but deny that he saw the instrument executed, other evidence will then be received. The law prudently calls for the testimony of the witness, but is too wise and too conscious of human imperfection and frailly, to rest its confidence, to limit its inquiry, and to conclude the rights of the parties solely by the recollection or forgetfulness, the integrity or waywardness, of any witness. In Dayrell v. Glasscock, Skinner 413, it was ruled that if there are three subscribing witnesses to a will, and on the trial, one of them would not swear he saw the testator seal and publish it as his will, yet if it be proved to he his hand, and that ho set it as a witness to the will, it is sufficient. In Blurton v. Toon, Skinner 639, an action of debt on an obligation and non est factum pleaded, one of the subscribing witnesses was dead, and the other being sworn, said his hand was subscribed as a witness, but that he did not see the obligation sealed and delivered; upon evidence of the handwriring of the other witness, the obligation was held to he sufficiently proved. The case of Pike v. Badmarring, cited in Andrews 236, and 2 Str. 1096, was an ejectment tried in the King’s Bench at bar upon a will — ■“ and every one of the three subscribing witnesses to the will,” says Andrews, *410 “ denying the execution, there was an endeavor on the side of the devisees to maintain the will without calling any of them; but the court insisted upon hearing these first and they all denied their hands; whereupon it was urged that the party could not call other persons in opposition to his *330] own witnesses. *But the court admitted other evidence, for that a man shall not'lose his cause through the iniquity of his witness.” And Strange says the will was supported. In Goodtitle v. Clayton, 4 Burr. 2224, Justice Yates said, there are cases where one witness has supported a will by swearing that the other two attested, though those other two have denied it; and Lord Mansfield said he had several cases both upon bonds and wills, where the attestation of witnesses had been supported by the evidence of the other witnesses, against that of the attesting witnesses who denied their own attestation; and in Abbot v. Plumbe, Doug. 216, he held that though the subscribing witness deny the deed you may call other witnesses to prove it, and said that it had often been done. In 10. Vez. 174, the Master of the Bolls said, “If there is the attestation and he confesses himself to be the attesting witness, prima facie, the presumption is, that what he has attested has taken place in his presence; if he denies that, other evidence is admissible, from circumstances, as where there were no attesting witnesses, or the person whose attestation appears, does not exist, proof of the handwriting is sufficient to enable a jury to presume in such a case, that sealing and delivery took place though the handwriting alone does not of itself import sealing and delivering.” In Fitzgerald v. Elsee, 2 Campb. 635, the subscribing witness to an indenture of apprenticeship having testified that he did not see it executed, it was objected that it must be taken, never to have been executed with due formality; but Lawrence S. said, it was then to be treated as if there were no attesting witness, and he admitted other proof of its execution. In Lemon v. Dean, ibid 636, it was held that if the subscribing witness cannot *411 prove a note by reason of not having seen it drawn, it may bo proved by other witnesses. In Rex v. Harringworth, 4 Maule and Selwyn 353, it was said by Lord Eilenborough “ a party who would prove the execution of any instrument that is attested, must lay the ground work by calling the subscribing witness to prove it if he can be produced and is capable of being examined. His testimony indeed, is not conclusive, for he may be of such a description as to bo undeserving of credit, and then the party may go on to prove him such, and may call other witnesses to prove the execution.” In Talbot v. Hodson, 7 Taunt. 251, by Gibbs, C. J. “ Where an attesting witness has denied all knowledge of the matter, the cause stands as though there *were no attesting witness, and other evidence may [*331 be admitted. Hero the attesting witness who attests the sealing and delivery says, she saw nothing of it, and the attesting witness being thus got rid of, it is open for the jury to consider of tho effect of any evidence that may be adduced.” In Sigfried v. Levan, 6 Serg. and Rawl 310, Justice Duncan delivering the opinion of the court, said, “The signature, sealing and delivery are matters of fact, to he tried by the jurors. If the subscribing witness denies the attestation, or is unable or unwilling to prove the execution of tho deed, collateral circumstantial evidence, proof of handwriting of the attesting witness, or acknowledgment are admissible. Where there is proof of the handwriting of the attesting witness this is evidence of all he professed to attest by his signature, the sealing and delivery of the bond.” In Pearson v. Wightman, 1 Rep. Con. Co. So. Ca. 310, Justice Cheves delivering tho opinion of the court says, “ Where subscribing witnesses cannot be produced, or where when produced they deny their signatures, or otherwise fail to prove tho due execution of tho will, circumstantial evidence may bo adduced to supply this deficiency. Of this description of evidence, proof of the handwriting of the subscribing witnesses is the most direct and usual.” And *412 speaking of one of the subscribing witnesses'who, like Welsh in the present case, did not positively deny the name to be his writing, but doubted it, he says — “ I then think the testimony of this witness himself would have authorized the verdict of the jury as it regards him. But the testimony of the witness already mentioned proves satisfactorily his handwriting,” — and he thought, therefore, that the verdict as it regarded him ought to stand.
The case of Phipps v. Parker, 1 Camp. 412, was cited and relied on by the counsel of the defendant in error. In that case, which was an action for words, it became necessary to prove a policy of insurance, which had the names of two of the directors of the Sun Eire Insurance office affixed to it, and purported to be executed by them in the presence of I. S., as attesting witnesses. I. S. swore it had not been executed in( his presence by either of the gentlemen whose names appeared at the bottom of it. It was then proposed to prove the execution of the policy, by evidence of the handwriting of the directors who had signed it, and b,y shewing that they had subsequently acknowledged it *332] to have been their *deed: Lord Ellenborough is reported to have said, “ The policy purports to have been executed in the presence of the witness. I must, therefore, take it to have been executed in his presence if it was executed at all. If it was not executed in his presence, the conclusion of law is that it -was never executed as a deed, although it may have been signed by these two directors. Nor can I admit evidence of their acknowledgment, since the attestation points out the specific mode in which the execution is to be proved. Being issued as an attested deed, and now certainly appearing not to have been executed in the presence of the attesting witness, I think it must be considered as invalid.” Of this case it may be said, it is entitled to no weight. It has either been inisreported, or it proves that a very able and learned judge may err. Eor it is inconsistent with a series of well considered adj udi *413 cations, and Justice Parke, speaking of it in 7 Taunton, 251 says, " The same high authority which decided Phipps v. Parker, has since held otherwise,” alluding probably to Rex v. Harringworth, already mentioned. The admissibility of other evidence then upon the denial or failure of proof by the subscribing witness, is abundantly shewn. But it was insisted, on the argument at the bar, that when the subscribing witness denies his handwriting, the mode of proof is confined to the handwriting of the party making the instrument, and that no case is to be found, where proof of tho handwriting of the witness was received or deemed sufficient. Now it is manifest that if such a rule exist it must utterly exclude all proof of an instrument to which a party unable to write, had made his mark. The observation that no such case is to be found, appears from the books already referred to, evidently too broad. But the law is not a mere collection of precedents. It is a science of principles, and he must be a very timid judge who is fearful to tread where he has the solid ground of principle to support him, because he cannot see the print of the footsteps of some predecessor. In Newbold v. Lamb, 2 South. 450, it was recognized as a settled principle and not now to be questioned, that proof of the death and of the handwriting of a subscribing witness to a deed, is sufficient to pass the deed to the consideration of the jury. And it has been held that when the witness is out of the jurisdiction of the court, 12 Mod. 607; 2 East 250; 4 John 461; 5 Cranch 13; or become blind, 1 Lord Raym. 734, or insane, 3 Campb. 283; or convicted of an infamous crime as *forgery, 2 Str. 833 ; or has become interested, 5. T. [*333 R. 371, 1 Str. 346, Binney 45; or upon due and strict inquiry cannot be found, 12 Mod. 607, 5 Cranch 13, proof of the handwriting of the attésting witness is prima facie evidence of the execution of the instrument. Now it is said the signature of the attesting witness when proved is evidence of every thing on the face of the instrument, on *414 the principle that what a man has attested under his hand is true, or that the witness would not have subscribed his name in attestation of that which did not take place. If then such be the rule in these cases, and such the principle on which it is founded, the very same presumption must arise and of course the same rule exist, where the handwriting is satisfactorily proved to be that of the witness, although from imperfection or defect of memory, he may have forgotten if, or from undue influence or bad motives he may wilfully and wickedly deny it. In such case, a greater quantity of evidence to prove his handwriting may be demanded, but when the fact is established, the consequence must be the same. Another instance may strongly illustrate and support my argument. In the case of Gaston v. Mason, Coxe 10, where the witness admitted his signature, but had no recollection of the execution of the instrument, the same presumption had its effect and the instrument was held sufficiently proved to go to the jury. It is true where the witness admits his signature, but expressly testifies that he did not in fact see the execution, the presumption is repelled and resort is had to proof of the handwriting of the party, or to collateral proof and the evidence of circumstance. And in the present case it-will be recollected beside the testimony of Uevius as to the handwriting, were the release, and the admission of Tucker respecting the settlement and receipt, and his repeated declarations that Patterson owed him nothing. Here then were some proof of the handwriting of the witness, and independent thereon, some evidence of circumstances, tending to produce a belief that the contents of the receipt were true. Whether these matters were such as should have satisfied the jury that the receipt was genuine, it is not necessary to examine. It is enough that they were sufficient fairly to raise a question of fact, which ought to have been submitted to the jury, for their determination. Where there is no evidence of the due execution of an instrument it is the duty of the court *415 to reject it. Where there is some evidence, the opinion of the jury ought to be taken. The remarks of Justice *Duncan, in Sigfried v. Levan, a case not dissimilar [*884 to the present in many circumstances, ape very appropriate. The mistake arises from supposing that the court in suffering the deed to go in evidence to the jury decide the issue. Nothing can be more unfounded. All that is done by the court in admitting the deed as evidence, is, that if the execution of the deed is proved by the subscribing witness, the party has made out a prima facie case, not a conclusive one; or in cases where recourse is had to the secondary evidence, the collateral proof is such that a jury might presume the execution, and then these facts are submitted to the jury, to exercise their own judgment, to draw their own conclusions, of sealing and delivery. The facts and circumstances were of that nature that the bond should have been received in evidence, open to all evidence that might be adduced to lessen the weight of these facts and circumstances, and in withholding the bond from the jury, the court decided that issue of fact which could only be decided by the jury.”
In opposition to the admissibility of the receipt it was further insisted, upon the argument at the bar, that the court might have rejected it, not that they actually did so, for their reasoh is not stated on the bill of exceptions, because irrelevant and inapplicable to the note. But this conclusion can find no appearance of support except in a partial view of the circumstances of the case. The receipt, it is said, does not mention the note, and is in full for tanning done for the defendant. It must, however, be recollected that whether a note had been given or had existence, was a subject of controversy. And the purpose of the defendant was as well to repel the allegation that he had made such a note, as also to shew by the release, and the receipt, and the declarations and admission of the plaintiff, that whatever might have been due to him at any time, had actually and fully been *416 paid. In this point of view a receipt given some months after the alleged date of the note, purporting to be in full for work, and more especially if, as may be fairly inferred from the matters set forth in the bill exceptions, no tanning had been done by the plaintiff for the defendant in the intermediate period, was clearly relevant and competent.
Let the judgment be reversed.